## Garrett *v.* Tinnen.

Special bail in attachment against absconding debtors was abolished by the acts of 1839 and 1840.

Under the existing law, it seems that appearance and plea alone will discharge an attachment in cases where the debt is due.

In case of an attachment issued under the statute against an absconding debtor, for a debt not due, the defendant cannot discharge the property, unless he gives bond with sufficient security, to pay the debt when it shall become due.

In attachment for debt not due the defendant in attachment has no right to plead until he has given bond and security for the payment of the debt.

The defendant in attachment may release the property attached, by giving bond any time before final judgment.

A plea in abatement to an attachment must traverse all the material allegations of the affidavit.

Since the act of 1840, a special bail bond in a proceeding by attachment is void.

IN ERROR from the circuit court of the county of Madison.

Attachment in the court below upon affidavit of these facts by Lewis M. Garrett, to wit: That William Tinnen is justly indebted to him in the sum of ten thousand six hundred dollars, which will become due and payable on the first day of January, 1841, and also in the further sum of ten thousand six hundred dollars, which will become due and payable on the first day of January, 1842; and that he has just cause to suspect and does suspect and verily believe that the said Tinnen will remove himself with his effects out of this state before the said debts will become due and payable, and that he had no knowledge, when the said debts were contracted, of the intention of said Tinnen so to remove.

Attachment in the usual form, corresponding with the affidavit, dated 4th November, 1840, levied and returned to the May term, 1841. At the said May term plaintiff filed his declaration, averring, "For that whereas heretofore, to wit, on the first day of December, A. D. 1836, at Vernon, to wit, at the county aforesaid,

the said defendant and one Abram Carraway (since deceased, who is not sued in this action) made their certain promissory note in writing, and thereby then and there by the name A. Carraway, William Tinnen, jointly and severally promised on or before the first day of January, 1841, to pay to the plaintiff or order ten thousand six hundred dollars, value received, and then and there delivered the said note to the said plaintiff; by means whereof the said defendant became liable, and afterwards, to wit, on the day and year aforesaid, in consideration thereof, undertook and promised to pay the said sum of money in said note specified to the said plaintiff, according to the tenor and effect of the said note."

Second count in the same form, on the note due 1st January, 1842. Breach: "Yet the said defendant hath not paid the said several sums of money although often requested to do so, but to pay the same hath wholly neglected and refused and still refuses," &c.

At the said May term, on the 4th of May, the defendant was permitted to enter into a recognizance of special bail, and replevy the property attached, to which the plaintiff in the attachment excepted, and had his exception made a part of the record. Also at said term, and on the 7th day of May, the defendant filed this plea:

"The state of Mississippi, Madison county, to wit:

Circuit Court, May Term, 1841.

Lewis M. Garrett
      *v.*       }   *On Attachment.*
William Tinnen.

And the said William Tinnen, by attorney, comes and defends the wrong and injury when, &c., and says that it was not his intention, nor would he have removed himself with his effects out of the state of Mississippi, before the debts mentioned in the original writ herein became or fell due, as in said writ is alleged, and this he is ready to verify. Wherefore he prays judgment of the said original writ, and the declaration thereon, and that the same may be quashed," &c., which plea was sworn to.

The plaintiff demurred, and for cause of demurrer assigned:

1. The plea is no answer to the declaration.

2. It is not authorized by law.

Garrett *v.* Tinnen.

3. If it be authorized by law, it must be to the grounds and causes of the plaintiff's belief that the defendant would remove with his effects out of the state, before the said debts would become payable.

4. If the defendant gave to the plaintiff just cause to suspect and verily believe that he, said defendant, would remove himself with his effects out of the state before the said debts would become payable, it is no defence for him that he did not intend to do so.

5. The law requires proof of the justice of the debt, and of the intention to remove only in cases where defendant does not appear, replevy and defend the action.

This demurrer was argued and the court gave the following judgment:

"This day came the parties aforesaid by their attornies, and thereupon the matters of law arising upon the demurrer of the plaintiff to the plea of the defendant came on and was argued, and because it appears to the court that the declaration of the plaintiff is defective and insufficient, it is therefore considered by the court that the said demurrer be applied to said declaration and sustained; and the said plaintiff may, if he think proper, amend his said declaration; but this the plaintiff declines to do, and asks the judgment of the court upon the record. It is therefore considered by the court that the defendant go hence without day, and recover of the plaintiff his costs by him about his suit in this behalf expended, and the plaintiff for his false clamor may be in mercy," &c.

The plaintiff below sued out a writ of error, and now assigns for error:

1. The court erred in permitting the defendant to replevy by giving special bail.

2. The court erred in not sustaining the demurrer filed to the plea of the defendant, and in sustaining it to the declaration.

3. The court erred in rendering judgment on the demurrer in favor of the defendant, and not in favor of the plaintiff.

We, for defendant in error, insist there is no error, &c.

Garrett *v.* Tinnen.

GARRETT, for plaintiff in error.

Foreign attachments are proceedings *in rem*. They are not of common law origin, but special remedies given to creditors against the rights, credits, and effects of the debtor, &c. Curtis *v.* Gibbs, 1 Pennington's Reports, 399; see also 3 Leigh's Rep. 306; Walker's Rep. 301; and 1 Howard, 48. They very much resemble the English law of *distress*, which is the taking of a personal chattel out of the possession of the wrong-doer into the custody of the party injured, to procure a satisfaction for the wrong committed. 3 Bl. Com. p. 6. It is true that, anciently, the remedy went no farther than a detention of the goods distrained, as a punishment to the debtor, and an inducement to pay the debt. But by several statutes enacted during the reigns of William and Mary, of Anne, and of George II. a power of sale was given to effectuate and complete the remedy. Ibid, 14. In order to replevy, that is, to take back the goods, which were deemed a pledge or security to compel the payment of the debt, the defendant had to give security to try the right of taking the goods in a suit at law; and, if that was determined against him, to return the goods into the hands of the distrainer. Ibid, 13. It is true, no bond and affidavit were necessary to be made by the landlord previous to levying the distress, as is required under our statutes of attachment and replevin; nevertheless, the goods could not be replevied without giving bond or security for the payment of the debt, if established.

Our statute, to regulate the practice of suing out and prosecuting writs of replevin, Revised Code, 168, which is an improvement upon the English law of distress, requiring as it does the further protection to the debtor of a bond and affidavit on the part of the creditor, is characterized by a still stronger resemblance to our attachment law proper. The defendant cannot regain the possession of goods levied on under this statute, without either giving sufficient security to the sheriff to pay the money with lawful interest, &c. Rev. Code, 169, section 2, or entering into bond with security to perform and satisfy the judgment of the court in such suit, in case he be cast therein. Ibid, 172, sec. 2. And the security in such bond cannot surrender the principal debtor, in discharge of his liability, but must perform and satisfy the judgment of the court in case of the failure of the principal so to do. If the de-

Garrett *v.* Tinnen.

fendant does not wish to contest the justice of the debt for which the levy is made he will execute a bond to pay it within three months, which amounts to an acknowledgment of the justice of the debt.   5 Howard, 267.   If he seeks to contest the plaintiff's right to recover he will sue out a writ of replevin, and give bond to satisfy the judgment of the court in case he be cast.   So, under the attachment-law proper, since the enactment of the statutes of 1839 and 1840, if the attachment is taken out for a debt not due, the defendant can replevy, either by giving bond with security to pay the debt at maturity, if he does not wish to contest its justness, or by giving bond to the sheriff to abide by and perform the judgment of the court in case he should be cast in the suit.   In the latter case, it is true, the security had, before the act of 1840, the same liberty of defence and relief, as if such security had been taken upon the execution of *mesne process.*   Rev. Code, 161, sec. 10.   But it is not lawful to arrest a debtor on *mesne process,* in any case where, after judgment, his body is not liable to be taken in execution.   5 Greenleaf's Reports, 291.   The undertaking of a surety, now, to surrender his principal, would contravene the policy and spirit of the act of 1840, and would be consequently void.   Hunt *v.* Knickerbocker, 5 Johnson, 327; Nerot *v.* Wallace, 3 Term. Rep. 18.   Therefore the rights which the security in a bond to the sheriff had, under the 10th section of the attachment law, Rev. Code, 161, similar to those of special bail, were necessarily taken away with the abolition of special bail.

It has been contended by counsel for the defendant in error, that an "appearance" merely will dissolve an attachment.   Suppose I admit the fact, and that the sole object of a writ of attachment is to compel an appearance.   What, then, I would ask, is the technical meaning of this term, *appearance?*   Our statute law does not define it.   We must, therefore, resort to the English law books to ascertain its true legal signification.   Actual presence in court, either of the defendant or his attorney, is not necessary, in England, to constitute an appearance.   "But, in fact, appearance is effected on the part of the defendant (where he is not arrested) by making certain formal entries"—to wit: common or fictitious bail— "in the proper office of the court, expressing his appearance, or, in case of arrest, it may be considered as effected by giving bail to

the action." Stephen on Pleading, 34. And the recognizance might be entered into out of court, before one of the judges, or a commissioner. 3 Bl. Com. 291. Again, an appearance, when effected, "is expressed by a formal entry, if there have been no actual arrest, of fictitious bail, in the proper office of the court, (which is called filing common bail to the action,) or, in case of actual arrest, by giving actual bail. Stephen on Pleading, 60; 3 Bl. Com. 290–1. "What is technically termed an appearance" "is accomplished by putting in special bail to the action, or bail above, as they are in general denominated in contradistinction to bail below, or bail to the sheriff." Petersdorff on Bail, 266, or 8th Law Library, 148. In the case of Campbell *v.* Morris, 3 Harr. & McHenry, 552, it was held, that "when the defendant comes in on the return of the attachment to appear, he is in the same situation he would have been in, if taken on a *capias ad respondendum*, and cannot appear without bail." And this decision of Chase, judge of the general court in the state of Maryland, agreeing with and sustaining the English authorities just quoted, completely demolishes the position of counsel against which I am combating. The decision of Justice Chase was reversed, it is true, by the court of appeals, but on other grounds than the principle which I have just extracted in regard to attachments; for the counsel who carried the case up, and in whose favor the court of appeals decided, asserted and maintained this same principle in his argument before that court. Thus, at page 568–9, he said: "The defendant can appear to the action, but his appearance can only be by giving bail, which dissolves the attachment."

Common or fictitious bail is unknown to our law. All bail is declared to be special bail, and, as such, "liable to the recovery of the plaintiff." Rev. Code, 110, sec. 30. The counsel for the defendant in error are, therefore, much mistaken as to the legal import of the term appearance, in cases where bail is required, or in suits by attachment. In the latter, defendants are in the same situation as if taken with a bail writ, as stated by Justice Chase, with this exception, that, prior to the act of 1840, they could *appear* by giving bond to pay the debt, or perform the judgment of the court, as well as by giving special bail; and, since the passage of that act, only by giving one or the other of such bonds. It is true

Garrett *v.* Tinnen.

that in cases of mere summons, where no bail is required, filing a plea is sufficient to estop the defendant from denying notice of the suit; but this is not necessary to be done to give jurisdiction to the court. Notice of the pendency of the suit in cases of summons, and notice and security for the debt in cases of bail writs and suits by attachment, are the objects of process. To show that appearance—I mean by actual presence in court—is not the object of the process of attachment, let us consider the nature of a bond to the sheriff contemplated by the 10th section. By this section the sheriff is required to take a bond conditioned that the defendant shall *appear* at the court to which the attachment is returnable, and abide by and perform the judgment of the court. Now, as soon as such a bond is taken, the attachment is dissolved; the proceeding *in rem* is converted into a proceeding *in personam;* and the attachment becomes the leading process in the suit. The defendant's actual presence in court will neither cause nor prevent his liability, or that of his sureties, to perform the judgment of the court. If the defendant should fail to appear personally in court, this would not amount to a forfeiture of the bond, provided the defendant should abide by and perform the judgment of the court, which might be done by paying the amount for which a judgment may have been rendered. And in this case the object of the attachment process, to wit: notice to the defendant and security for the debt, is accomplished without actual presence in court; which shows that the word appearance, as used in this section, is mere surplussage. If the legislature had not used the phrase, "and putting in good special bail," in the 10th section, but had said merely, "that all attachment shall be repleviable, at any time before final judgment is entered, or writ of inquiry executed, on the appearance of the defendant," the meaning of the section would not have been at all different from what it is. The phrase, "putting in good special bail," is surplussage, and adds neither meaning or elegance to the sentence.

So if the legislature had omitted the word appearance, and said merely that "all attachments shall be repleviable at any time before final judgment entered, or writ of inquiry executed," by "putting in good special bail," the meaning of the section would have been the same. If the term appearance, was intended to

convey any meaning other than that conveyed by the phrase special bail, it was to require actual presence in court to enter into the recognizance, instead of doing so before a judge of the supreme court, or justice of the peace, as might be done on the execution of other process requiring bail. Rev. *Code*, 112, sec. 34. In England bail below or bail taken by the sheriff were a little different from special bail or bail above. The former were bound for the appearance to answer the plaintiff's complaint; the latter to pay the judgment or condemnation of the court or surrender the defendant's body to prison. The former were liable, however, to become special bail, if bail above was not perfected. 3 Bl. Com. 291, and Appendix No. III, sec. 5. But putting in special bail accomplished the appearance for which bail below were bound, and the latter were discharged from liability. And was all this trouble of giving bail below and bail above intended merely to compel such an appearance as the counsel speak of, to wit: merely filing a plea? or to show the face of the defendant to the court? No. The object of all such process was security for the debt; and such security was considered as afforded by the surrender of the defendant's body to prison, or the obligation of him and his sureties to pay the judgment of the court. The position of counsel would make the object of the attachment, in which bond and affidavit are required, merely to make the defendant file a plea by attorney,

Such was the legal signification of the term appearance, under the law of England, viz: a security to pay the debt if established before the court, which security might be either the defendant's body, or his property and that of his securities. And such was our law prior to the late acts abolishing imprisonment for debt, with this difference, that bail taken by the sheriff were declared special bail, and liable to the plaintiff's recovery; not merely for defendant's appearance to give special bail. Rev. *Code* 109, sec. 28, 29, 30.

But the legislature deemed the remedy of a *cap. ad. respond.* and bail thereon an insufficient protection to the rights of the creditor; and, therefore, gave him the additional, extraordinary remedy, to wit: the process of attachment. By this the creditor could, on making affidavit and executing bond to indemnify his

debtor against injuries which might result from wrongfully suing out the writ, have the debtor's property seized upon, for what? not to make him file a plea or defend the suit, but to compel him to give security to pay the debt, if established by the judgment of the court.   And what sort of security did they require the defendant to give before he was permitted to regain the possession of his property?   If the debt was due he could give it in two ways: He could either wait till the return term of the writ and enter into a recognizance of special bail in like manner as if taken with a bail writ; or he could execute a bond to be taken by the sheriff, conditioned that he would abide by and perform the judgment of the court.   Rev. Code, 161, sec. 10.   In the latter case, although the bond was a very different thing from special bail, as it contained no obligation or condition to surrender the body of the defendant, yet the legislature gave the securities in such bond "the same liberty of defence and relief as if such security had been taken on the execution of mesne process."   And the officer could serve such attachment, not only upon the goods and chattels, but upon the lands and tenements of the defendant.

If the debt was not due, and the defendant did not seek to contest the justness of it, he might give the plaintiff the security sought for by entering into bond, with sufficient sureties, for the payment of it when it shall become payable.   Rev. Code, 165, sec. 20.   And a proviso in this 20th section gave the defendant the right, also, to replevy in the same manner as other attachments were by law repleviable.   Consequently, under an attachment founded upon debts not due, the defendant might dissolve it by giving security to the plaintiff in three different ways, viz:

1. By giving a bond, with sureties, for the payment of the debt at maturity; in which case no appearance at the court to which the attachment was returnable was contemplated.   Nor had the sureties in such bond any right, either by the conditions of the bond or the provisions of the statute, to surrender the body of the principal debtor into court in discharge of their liability.   They were bound, unconditionally, to pay the debt when it became due.   And can any one who has ever looked at a law book—can any one who knows any thing of the English language—read this 20th section, and for a moment doubt that to secure the debt,

not procure a plea to be filed, was what the law intended. Attachments under this section could be levied only on personal property.

2. By giving bond to the sheriff, conditioned to abide by and perform the judgment of the court.

3. By entering into a recognizance of special bail in open court on the return of the process.

In no other way could the defendant regain the possession of his property at law when levied on under an attachment than in one or the other of these three modes of giving security for the payment of the debt. And thus stood the law until the legislature considered it impolitic to subject a debtor's body to the satisfaction of debts. In 1840 they declared accordingly, "that from and after the passage of this act, no person whatever shall be imprisoned for debt, under any pretence, unless upon issue submitted to a jury, and they declare there has been fraud on the part of the debtor in concealing his property." Laws of 1840, p. 40.

Now what change, if any, did this statute operate upon the attachment law? There is no express intention in it either to alter or repeal any part of the attachment law. If it has effected any change it must have been by implication. The cause of action in the case at bar consists of, 1. Indebtedness of the defendant to mature at future periods. 2. Sufficient grounds for the creditor to suspect that he would remove with his effects out of this state before the debts would become due. The cause of action might arise, then, without any fraud on the part of the debtor in concealing his property. And his body could not, therefore, be imprisoned to secure the debt. And if so, neither could the means (one of which is special bail,) which the law provided to attain that end be used. The liability of the bail can never be fixed without a previous *ca. sa.* against the principal. Peteet *v.* Ousley, 7 Monroe, 130; Beers *et al. v.* Haughton, 9 Peters, 329.

Special bail, then, is a nullity, since the act of 1840, so far as this case is concerned. Indeed, the counsel for the defendant in error have admitted that special bail was abolished by the act of 1840. I conclude, then, that as it is contrary to the policy of this statute to imprison for debt, special bail is no security at all to the plaintiff; nor can the defendant's appearance be effected or the at-

Garrett *v.* Tinnen.

tachment dissolved by entering into such recognizance. It would be but a blank piece of paper.

Has the statute of 1840 deprived the debtor of the right to replevy his property by giving security in either of the other two modes above pointed out? It has been contended that the securities in the bond to the sheriff, contemplated by the 10th section (Rev. Code, 161,) of the attachment law, are nothing more or less than special bail; which construction is thought to be justified by the phraseology of the last clause of the sentence which forms the entire section, and which reads thus: such "security shall be subject to the same judgment and recovery, and have the same liberty of defence and relief, as if such security had been taken upon the execution of *mesne process.*" But if such a bond was in fact special bail, why were the legislature so particular in providing that the securities (or the sheriff, if they were insufficient,) should have the same liberty of defence and relief as special bail? This very particularity shows conclusively that the legislature did not consider them as special bail. For, if they did, they were guilty of worse than a waste of language in thus superadding rights which such securities already possessed. And the legislature, unquestionably, had the power afterwards to alter the law by declaring that securities in such bonds should not have the same liberty of defence and relief as special bail, but should be bound to abide by and perform the judgment of the court, in the same manner as securities in an action of replevin are bound "to perform and satisfy the judgment of the court in such suit," &c. Revised Code, 172, sec. 15. And such power was exercised in enacting the statute of 1840.

That the effect of the statute of 1840 has been to abolish special bail, and to take away the liberty of defence and relief which securities in bonds to the sheriff had in common with special bail, is a construction fully justified by the rules laid down by the sages of the law for the interpretation of statutes; one of which rules is, that "the law does not favor a repeal by implication, unless the repugnance be quite plain; and, such repeal carrying with it a reflection on the wisdom of former parliaments, it has ever been confined to repealing as little as possible of the preceding statutes." Devarris on Stat. 674.

Garrett *v.* Tinnen.

The power of surrendering the body of the principal is so repugnant to the act of 1840, that it is necessarily repealed by implication. But an undertaking by the security in a bond to the sheriff to abide by and perform the judgment of the court, is not repugnant to the act of 1840, and therefore so much of said 10th section as authorizes such a bond is unrepealed. To say that a bond to the sheriff, as contemplated by said 10th section, is in fact special bail, and consequently repealed by the act of 1840, is to declare that that act has taken away all right to replevy property which may be levied on under attachments for debts due; in other words, it is to declare that the 10th section is wholly repealed. And, if this be so, the proviso in the 20th section, which allows attachments for debts not due to be replevied "in the same manner as other attachments are by law repleviable," is also repealed, leaving the remainder of section 20 in full force. And, under this view of the case, the only mode of giving security to dissolve an attachment and regain possession of his property, which is left to the debtor, is, "on or before the return" day of the attachment, to "enter into bond, with sufficient security, for the payment of the debt, when it shall become payable." But I do not believe that said proviso, or 10th section, was wholly repealed. It was repealed partially—so far only as to make special bail unlawful.

The intention of sections 10 and 20 evidently is to require the debtor to give bond on or before the return day of the attachment; and, on his failure so to do, to give the creditor a judgment, on due proof of the justice of the debt, &c. For the language of section 20 is imperative: "If such debtor shall not, on or before the return of such attachment, enter into bond, with sufficient security, for the payment of said debt when it shall become payable, the court, on due proof of the justice, &c. shall grant judgment," &c. Is it in the power of this court to say, that, under such a state of things, the creditor shall not have his judgment as the law has directed? Will it be said that the proviso of sec. 20, and that section 10, authorize the *court* to take a bond after the return day of the attachment? The 10th section says that the *sheriff* or other officer, who is responsible to the creditor for the sufficiency of the securities he may take, is "empowered and required to take" the bond. But he cannot take it after he has

Garrett *v.* Tinnen.

returned the writ. And can this court declare that the circuit court shall do that which the legislature have "required" the sheriff to do? It might, with equal propriety, be declared competent for the circuit judge to execute the process itself. It is true that, by section 10, the circuit judge had formerly the power of taking special bail. But this was required to be done in open court. The bail were compelled to qualify in the presence of the court, the bar, and the spectators, as to their sufficiency. This circumstance atoned, in some degree, for the want of responsibility in the judge. Moreover, it was presumed that the securities in a recognizance of special bail, although they might be insufficient, would prefer surrendering the body of the principal, which was good security then, to becoming liable for his debt.

The last section of the attachment law, Rev. Code, 168, directs that this law shall be construed, in all courts of judicature, in the most liberal manner, for "the advancement of justice and the benefit of creditors." And I submit to this court whether it will be for the benefit of creditors so to construe this law as to permit the circuit judges, who are not responsible for the sufficiency of the securities they may take, to do that which the legislature have "required" the officer to do, and who is responsible for the sufficiency of such securities. Counsel for the defendant in error (Judge Hughes) has had the candor to admit, in his brief on the first argument of this case, that the bond to the sheriff cannot be given, except between the levy of the attachment and the return of the writ. It was not done in the case at bar, and I was therefore entitled to a judgment.

But suppose that, for the sake of argument, I admit that not only the bond to the sheriff under the 10th section, but the bond also under the 20th, amount to nothing more or less than special bail, and what follows? Why, that all right to replevy at all has been taken away by the act of 1840, and that the right, on the part of the creditor to attach, remains in force. For there is no repugnance "quite plain" between the act of 1840 and so much of the attachment law as authorizes writs of attachment to issue, as to effect the repeal of the latter. Devarris on Stat. p. 674. The right to attach and the act of 1840 "may well subsist together." 15 East, 377.

Vol. VII.—41

Is it possible, it may be asked, that the legislature intended to give the creditor the right to seize the debtor's goods, and at the same time to deprive the latter of all means of regaining his property? A sufficient reply to this might be, that this court has nothing to do with the policy of the law, but must collect the meaning of the legislature from the words of the statute. Devar. on Stat. 703. But, even under such a construction as this, the debtor would not be wholly without a remedy or protection from injustice. If the debt on which the attachment may be founded is just, he can regain his property by paying the debt, as he ought to do; and if it is not, the law has required the creditor to make an affidavit and execute a bond before he can obtain the writ; and this is considered sufficient protection to the debtor against the injuries which may result to him by a resort of the creditor to this extraordinary remedy. In addition to this, he may invoke the aid of a court of chancery, if the claim be unconscionable.

In England appearance was indispensably necessary to give the court jurisdiction to proceed in the suit. But in actions where no bail was required the appearance might be fictitious. Not so with us. Legal notice of the pendency of the suit is all 'that our law requires to give the court jurisdiction and enable it to pronounce judgment. In 5 Greenleaf, 291, like doctrine is held. This notice may be given in ordinary suits by leaving the summons at defendant's residence, &c. Where bail was required, before the act of 1840, he must have been taken into custody, and he could not appear without either remaining in custody or giving special bail. Rev. Code, p. 111, sec. 33. This shows that appearance meant security for the debt. If the notice was given by a levy of the attachment, the appearance was given by special bail, or a bond to pay the judgment, or to pay the debt; but the court could condemn the property levied on and have it sold without an appearance. But either the property levied on, or the security aforesaid, it was the right of the creditor to have. This shows that to secure the debt was the object of the attachment as well as of the *capias ad respondendum* requiring bail. But counsel for the defendant in error argue, that because the security afforded by special bail has been taken from the creditor, *ergo*, all the security which the debtor's property or credit afforded has been also taken away ! that

the sole object for which an attachment issues is to cause an attorney to file a plea denying the debt ! This would be a construction of the law for the benefit of creditors " with a vengeance" indeed.

By the levy of an attachment a lien is created upon the property not only against the acts of the debtor himself, but against the subsequent acts of all other persons. 10 John. 129. It is the writ, and not the judgment thereon which gives this lien. 2 Bay's Rep. p. 8–3; Burrough therein cited, p. 1243. This court has decided, 1 Howard, p. 48, that a sale of attached property after judgment is not made to change the ownership, for that is transferred by the levy to the plaintiff, but merely to ascertain its value. How then is this lien to be discharged and the property revested in the debtor? Counsel say, by filing a plea by attorney!

I have elsewhere said that the process of foreign attachment was a remedy not of common law origin. The writ of *capias ad respondendum* was also a process unknown to the common law, "the defendant, if he had any substance, being gradually stripped of it all by repeated distresses, till he rendered obedience to the King's writ; and if he had no substance, the law held him incapable of making satisfaction, and therefore looked upon all further process as nugatory." " But in cases of injury accompanied with force, the law to punish the breach of the peace, and prevent its disturbance for the future, provided also a process against the defendant's person in case he neglected to appear upon the former process of attachment, or had no substance whereby to be attached; subjecting his body to imprisonment by the writ of *capias ad respondendum*." 3 Bl. Com. 281–2. But by the practice of the courts and sundry acts of parliament, this writ was allowed in all actions unaccompanied with force, until it has become usual to " sue out a *capias* in the first instance, upon a supposed return of the sheriff; especially if it be suspected that the defendant, upon a notice of the action will abscond." *Ibid.* And this writ, by the indulgence of the courts, has become a mere summons, unless the plaintiff will make affidavit that the cause of action amounts to —— pounds, and then the defendant is arrested, and detained in order to appear and abide the determination of the law. He was not compelled to go to jail, however, before judgment was rendered

against him, provided he could give a bail bond to the sheriff, 3 Bl. Com. 290, and appendix No. 3, sec. 5; in which case he was put into the friendly custody of his securities whose liability for him was discharged by the surrender of his body, or his putting in special bail.

The writ of *capias ad respondendum* was in force in this state by the act of 1822. Rev. Code, 109. And the sheriff was required to take bail upon the execution of this writ in every case in which the action was founded on "any specialty, bill or note in writing, signed by the defendant, or on the judgment of any court foreign or domestic, or upon any penal statute expressly requiring bail to be taken," as a matter of course, if the nature of the action was indorsed on the writ, and the direction, "no bail is required," was not written thereon. In actions upon accounts, &c., also, where the sum due could be ascertained, and affidavit thereof made and filed, the sheriff was required to take bail if not otherwise directed by the indorsement on the writ. But the legislature of 1822, regarded even this as insufficient to insure the collection of debts to the creditor; and therefore provided the additional remedy of the process of attachment. And this attachment law being in its nature *remedial*, it would have been the duty of the courts to construe it liberally, so as to suppress the mischief (to wit : the insufficiency of the former law in securing the payment of debts,) and to " advance the remedy." Devarris on Statutes, p. 694. But lest the judges should fall short of their wishes on this subject, the legislature, out of abundant caution, expressly declared that this law should be "construed in all courts of judicature, in the most liberal manner for the detection of fraud, the advancement of justice, and the benefit of creditors." Sec. 31, p. 168. They did not stop at the positive, or comparative degree, but used the superlative, the strongest term which the language admitted, in order to insure such a construction by the courts as would effectuate the remedy in behalf of creditors. Thus the law existed prior to the passage of the late acts abolishing imprisonment for debt, which, according to the position of counsel for the defendants in error, have taken away entirely the security which was afforded to the creditor either by the writ of *capias ad respondendum*, or the writ of attachment. And this, too, when there is no

express intention to repeal the attachment law, (special bail being repealed only by implication,) and when this law, with the exception of the part allowing special bail, the act of 1840, may well subsist together.

The position of counsel amounts to this: that the process of attachment originally was intended to compel the debtor either to give special bail, or employ an attorney to file a plea ; and that as special bail is abolished, the only alternative left the debtor is to employ an attorney to file a plea. And this plea is all that the creditor can gain by his affidavit, bond and levy in the presence of a witness in the way of security for his debt. The mere statement of this position, after an examination into the principles of law bearing on this case, is sufficient to demolish it by the *reductio ad absurdum*.

If it should be contended that the recognizance of special bail, entered into in this case is not void *in toto*, but only that part of it which requires a surrender of the body, leaving in force so much thereof as is an engagement to pay the condemnation money; the following authorities will sufficiently refute such a position: Powell, in his work on contracts and agreements, p. 267, in treating of conditions, observes, "A distinction is also taken upon bonds, recognizances, and executory contracts, where the impossible condition is a part of the bond, recognizance, or contract, and where it is indorsed or under-written; for, in the former case, the instrument thereby becomes void;" in the latter it becomes single. "If the bond be conditioned to perform an act that is impossible, as to pay money at a day past, or to render a person in execution who has once been discharged, the condition will be void, and the bond remain single, provided the condition is under-written or indorsed; but, if it be incorporated with the obligatory part of the bond, the instrument will be altogether void." Hurtstone on Bonds, p. 11, vol. 7 of Law Lib.

But even where the condition is underwritten or indorsed, if the condition be unlawful, not only the condition but the obligation also is void. Ibid. p. 12.

The condition may be unlawful, either from its being contrary to the general rule and policy of the law, or in violation of some express statutory enactment, and in such cases, if the condition be

entire, or if it consist of several distinct parts, some of which are *malum in se*, or unlawful by statute, the whole bond will be void. Ibid. p. 13.

If the condition be part of the obligation, and incorporated with it, if that becomes impossible, the obligation shall be void; as, if the condition of a recognizance by bail be impossible. 3 Comyn's Dig. title Condition, letter D. 8.

The court will perceive that a distinction is here taken between unlawful and impossible conditions. An impossible condition, if indorsed or underwritten, does not make the bond void, but it becomes single; whereas an unlawful condition, in such case, makes the whole bond void. Either of them, if incorporated with the obligation, renders it void in toto. In this case at bar the condition to surrender the body was not only unlawful but incorporated with the obligation, and must, according to the authorities just cited, be wholly void.

As to the other question raised in the case, viz: whether a demurrer to a plea in abatement can be applied to the declaration, it is sufficient to cite Stephen on Pleading, 176 or 144; and 1 Chitty on Pleading, 708.

S. S. PRENTISS, for defendant in error.

I conceive, that by a careful examination of the whole attachment-law, it will appear that these two conditions are not in the alternative, in the sense implied by the suggestion thrown out by the court, but are wholly independent, and apply to entirely different stages of the proceeding. The 15th section of the attachment-law, Howard & Hutch. 550, says, "all attachments shall be repleviable at any time before final judgment entered, or writ of inquiry executed, on the appearance of the defendant, and putting in good special bail, or by giving bond with good security to the sheriff or other officer serving the same; which bond the sheriff or other officer is hereby empowered and required to take, to appear at the court to which such attachment shall be returnable, and to abide by and perform the order and judgment of such court.

Now so far from these conditions being in the alternative, they cannot and could not, before the act of 1840, which is supposed to

repeal special bail, be substituted for each other; they are totally distinct provisions; the one prescribes the mode of replevying the attached property, before appearance, by giving bond to the sheriff or other officer, as above stated; the other prescribes the mode and conditions of replevying after the return of the attachment, which was by appearance and special bail. Now if the act of 1840 abolishes special bail, then the only condition of replevy left, after the return of the attachment, is appearance. If this does not replevy the attached property, then it cannot be replevied at all, after the return of the attachment; for there is no authority in any part of the attachment-law for the court to take after appearance any other security than special bail. The repeal of one condition cannot substitute another.

That the bond required to be given to the sheriff to appear and abide by and perform the order and judgment of the court, cannot and was not intended to be required, after the return of the attachment and an actual appearance, is obvious from the very terms of it, one of its conditions being to appear. It is further apparent, by the 20th and 21st sections of the law, How. & Hutch. Digest, 552, which provide positively, and not in the alternative, that if the defendant appear, put in bail, (that is special bail,) and plead, as aforesaid, his estate so attached shall be liberated. Now these are the only conditions of replevy, after the return of the attachment. If the act of 1840 has repealed the condition of special bail by abolishing it, it certainly has substituted no other condition in its stead; and the defendant must be permitted to replevy by appearance and plea, or he cannot replevy at all, which last proposition is too monstrous to be entertained for a moment.

The proviso at the end of the 25th section, (How. & Hutch.) authorizing attachments before debt due, and under which these proceedings were had, makes such "attachments replevriable in the same manner as other attachments are by law replevriable." If then other attachments are replevriable after return by appearance and plea, then this attachment was discharged and the property released by the appearance and plea of the defendant.

This view of the law is reasonable. The great object of attachment, especially in attachments before debt due, being to bring the party into court, so that the judgment of the court may

bind his person, it naturally follows that the conditions upon which he would be permittted to replevy before appearance would be different and more severe than those to which he would be subjected after appearance, when the main (I think the sole) object of the process has been accomplished.

I take it there is no alternative in the conditions of the law. On or before the return of the attachment you can replevy only by bond to appear and abide the judgment of the court. After return you can replevy only by appearance, special bail and plea; or, if the act of 1840 abolishes special bail, by appearance and plea.

There is another point to which I will call the attention of the court. The declaration is clearly and fatally defective. It shows no cause of action, and sets out no grounds which bring it within the statute. The breach upon which damages are assigned, and upon which alone a judgment can be rendered, is the refusal to pay before the commencement of the suit the notes sued on. But it further appears upon the face of the declaration that neither of the notes were due, and of course at the commencement of the suit there was no cause of action arising out of the non-payment of the notes. The special grounds upon which alone the suit could be maintained, are not set out or averred. What judgment could the court render upon a verdict for plaintiff? None that would not be erroneous. It is a familiar principle that a demurrer to a plea which contains matter in bar, goes back to the declaration, and reaches any defects which could be reached by general demurrer. The plea in abatement in this case is clearly good in abatement, unless it ought to have been a plea in bar. If it ought to have been plead in bar, then the demurrer goes back to the declaration, which is manifestly vicious. If it ought not to have been plead in bar, then it is properly plead in abatement, and the demurrer must be overruled.

It is absurd to contend that the very fact, and the only one too, upon which the suit rests, is not issuable either by a plea in bar or in abatement. The intention of the defendant to remove constitutes in this case the very gist of the action. Without it the plaintiff has no right to appear in court.

In cases of debts due the plaintiff has a right to appear in court,

by virtue of his cause of action already accrued. But in case of debts not due, his whole right depends upon the fact of intention to remove or actual removal on the part of defendant. Suppose this action had been founded upon an affidavit of actual removal. Would not the defendant have had the right to have come in and contested this fact; and upon an issue found that he had not removed, would not the case have been out of court? I do not doubt that, in case of attachment before debt due, the plaintiff is bound specially to aver in his declaration the facts that give the court jurisdiction, to wit: the intention to remove, or the actual removal. Then, if the defendant does not appear, the court, upon due proof of the justice of the debt, and of the intention to remove or the actual removal, may render judgment, &c. If however the defendant does appear, there is no necessity for the court to require this proof, because the defendant can plead and make an issue upon the point himself. It would certainly be very curious if the court was bound, in the absence of the defendant, to require proof of facts from the plaintiff in support of his action which the defendant could not require and put in issue when present.

I take it a defendant has a right in every case, without exception, to plead anything which shows that the plaintiff had no right of action when he commenced his suit. If the intention to remove did not exist, then the plaintiff in this case had no right of action. The plea that defendant did not intend to remove before the debt fell due, is then a good plea either in bar or in abatement. If in bar, then as a defective mode of pleading it will not be regarded, but the court will go back to the defective declaration. If it is good in abatement, then it is properly pleaded and the demurrer must be overruled.

Hughes, for defendant in error.

By the first error assigned, it is insisted, that the court should not have permitted the defendant to replevy the property attached, by entering his appearance, and giving special bail to the action.

If there is any person who should complain in reference to the action of the court below, it is the defendant, and not the plaintiff. It is clear, as will be made manifest by a review of the statutes on

the subject, that special bail should not have been required of the defendant before he was permitted to replevy the property attached. The act of 1840, pamphlet 40, ch. 8, sec. 1, declares, "that from and after the passage of that act, no person whatever shall be imprisoned for debt, under any pretence, unless upon issue submitted to a jury, and they declare there had been fraud upon the part of the debtor in concealing his property." Upon this statute it has been decided that proceedings cannot be had to enforce, or have execution against bail, whose liability had been fixed by the return of *non est inventus* upon execution before the passage of the act, because scire facias had to issue against the bail, upon which, if before the return day he produced the body of his principal, he would be discharged; and it being out of the power of the bail, by reason of the act of 1840, to take the principal, the bail was necessarily discharged. See opinion of this court in the case of Brown *v.* Dellahunty & Davis, at the January term, 1841, opinion book B, page 84.

The principle of the case referred to is as well applicable to the taking of bail as to the liability of such bail after being taken. What is the propriety of taking bail, if the obligation taken cannot be enforced? There is none whatever. But the truth is, that the provision contained in the act of 1840 is a repeal, by implication, of all laws theretofore in force in the state on the subject of bail, because that act is inconsistent with those laws. It is declared that no person shall be imprisoned for debt. How can this stand with the provisions of the attachment law, which permit a person to replevy, or, in other words, regain the possession of his property on the condition only that he shall give security, with condition that he shall pay the condemnation money awarded by the court, or surrender his body in satisfaction of the same, or that his security shall do it for him. Is it lawful for a court to require a party to undertake to do that which it is not lawful to the court to compel him to do? The law declares that it shall not be lawful for the court to issue process to take and imprison the body of a defendant for debt; yet, where a debt is due, it shall be lawful to issue original process, by which the property of the defendant may be taken, until he voluntarily gives security to do that which he cannot directly be ordered to do. But, to save any difficulty,

Garrett *v.* Tinnen.

the defendant in the court below gave special bail, and thereby re-plevied the property. This is objected to, and it is insisted that the court erred, because so much of the law as required special bail was repealed by the act of 1840. We agree, and think we have shown that so much of all laws as required special bail to be taken in attachment is repealed. It does not, however, follow, that the defendant was not authorized to replevy. It is a well un-derstood rule of construction, that no part of' one law is repealed, except that which is repealed in express terms, or that which is inconsistent with, or in opposition to a subsequent law. With this rule in view, it will be well to look into the law under con-sideration and see what is repealed in express terms, and what by implication. That part of the attachment law which is in re-lation to debts due, was intended to compel the appearance of the defendant by levy on his goods and chattels, lands and tenements, in consequence of his absconding or concealing himself, &c., so that the ordinary process of the law could not be served upon him. That ordinary process was a *capias*, upon which bail was to be taken; but by reason of absconding, &c., that ordinary pro-cess could not be served so as to compel an appearance and the giving of bail, and those attachment laws would not be satisfied un-til the object they had in view was accomplished. The defendant, therefore, was not permitted to plead to the suit until he had given bail to the action, and thereby placed himself in the situation he would have been had process been served upon him. See Revised Code, 160, 161, 162, 163, sec. 6, 10, 14, 15, 18.

The property attached might be replevied. How? By the ap-pearance of the defendant, and by giving special bail, two require-ments only. Are both of these or either of them repealed? One only; that which requires special bail: but the other, that requiring an appearance, is still in full force and effect. To decide that so much of the law is repealed as authorized the defendant to re-plevy, by entering his appearance, would be a violation of the rule before laid down, and would force upon the defendant a sub-mission to a levy upon his property by attachment, without any possibility of getting clear of it. Upon what principle such a construction can be insisted upon we do not know. If, however, it be determined that only so much of the attachment law as re-

quires the giving of special bail is repealed, and the balance is yet in force, then the attachment conforms to the law on the subject of service of process on the person, and both laws form one harmonious whole. An attachment before it is dissolved by appearance, &c. is a proceeding *in rem*, but after appearance, &c. the attachment becomes the leading process in the suit, and is to be prosecuted to judgment like other suits. If no appearance, &c. be entered, final judgment is rendered, and because the law presumes that notice has not been actually given to the defendant, only such property as has been levied on can be taken in satisfaction of the execution. See Revised Code, 167, sec. 25. From all which it results, that as soon as appearance is entered, the law is satisfied, and the defendant is authorized to replevy his property and plead to the action. This review, so far, of the attachment-law has been gone into, because it is directly connected with the question arising under the 20th section of the same law, Revised Code, 165, under which this proceeding was had. That section, or so much of it as it may be necessary to examine, is in these words: "Whenever any creditor shall have sufficient grounds to suspect that his debtor will remove his effects out of the state before his debt will be payable, or whenever such debtor shall have so removed, leaving effects, it shall be lawful for such creditor to go before any judge or justice of the county court, or justice of the peace of the county where his debtor resides or where his effects may be found, and make oath or affirmation to the true amount of his debt, and the time when it will be payable, and that he hath just cause to suspect and verily believe that such debtor will remove himself with his effects out of the state before the said debt will become payable, or hath actually so removed, and also that he had no knowledge when said debt was contracted of the intention of such debtor so to remove; and thereupon such judge or justice taking bond, &c., shall issue an attachment, &c. If such debtor shall not, on or before the return of such attachment, enter into bond with sufficient security for the payment of the said debt when it shall become payable, the court on due proof the justice thereof, and of the intention of the debtor to remove or of his having actually removed out of the state, shall grant judgment as in other cases of attachment, &c.;

Garrett *v.* Tinnen.

*Provided*, also, that all such attachments shall be repleviable in the same manner as other attachments are by law repleviable," &c. Because this section provides, under certain circumstances, for the issuance of attachments where debts are not due and before they are due, and because of the provision in it that the court shall render judgment as in other cases, unless the defendant give bond for the payment of the debt when due, it is insisted that this section is not to be governed by the rules which govern the other sections, and that the defendant is not entitled to replevy. To this it is answered, that the judgment is to be rendered as in other cases of attachment, and the attachment in like manner may be replevied. In other cases, how is judgment to be rendered, and how is replevy to take place? The judgment is to be rendered by default, and the property attached sold, unless the appearance of the defendant is entered, and thereby the property replevied. Then judgment is not to be rendered as in other cases of attachment, but like in other suits ; which leads to the consideration of the other assignments of error, which are in fact but one. The demurrer was properly sustained to the plaintiff's declaration, when he demurred to the plea of the defendant.

The consideration of this question involves a further construction of the 20th section. It is manifest from the words of this section, that an attachment upon the affidavit of the belief of the plaintiff was authorized to be issued, but it is not manifest, as seems to be supposed on the other side, that upon proof that he had reasons which satisfied his mind, and which induced him to swear to his belief that he will be entitled to judgment. But he must satisfy the court that the fact at the time was, that the defendant did intend to remove, or had removed, for the words used are, "on due proof of the intention to remove." It was therefore necessary, before a judgment could be rendered, that the plaintiff make proof of the intention to remove. Upon the appearance of the defendant he knew the debt was not due, and there was no pretension for a recovery against him, unless it was true that he had given cause for the issuance of the attachment, by forming an intention of removing. This he knew to be untrue, and that it was the *gravamen* of the complainant's claim. He, therefore, by his plea, which he was compelled to file to avoid a judgment by default,

traversed the intention to remove. This is said to be no answer to the declaration, and not authorized by law. It is a well settled rule of pleading, that whatever fact is necessary to be proven, in order to a recovery, may be traversed by pleading.

It was insisted, however, in the court below, that the plea, if setting up good matter, should have been in bar, instead of in abatement. The rule on this subject is, "that where the subject matter of the plea tends to show that the plaintiff cannot at any time maintain an action to the supposed cause of action, the plea should be in bar. But where the matter merely defeats the present proceeding, and does not show that the plaintiff is for ever concluded, should be plead in abatement. 1 Chitty Plead. 386.

A plea that the defendant never absconded is a good plea, and is a plea in abatement. 2 Hen. & Munf. 308; 3 Stuart, 226; Brown *v.* Massie; Hard. Rep. 65; 1 Gen. Com. Law, 90. But the plea should conclude to quash. H. & M. 308. Plea in abatement that defendant has no title or interest in the land attached. A good plea. 6 Pick. Mass. Rep. 364; 1 Am. C. L. Rep. 62, 68.

Issue submitted to a jury on plea in abatement, they must assess damages if they find for plaintiff. 3 New Hamp. Rep. 232; 1 Am. Com. Law Rep. 94; Wallace C. C. Rep. 51; 2 Will's 367; 2 Chit. Rep. 5. Plea in abatement, no land or security, good. 1 Devereaux, N. C. Rep. 397; Am. Com. Law Rep. 96. Appearance and giving special bail dissolves the attachment. 1 Har. & Johns. Rep. Md. 491; 1 Am. Com. Law Rep. 593--595--6; Har. & Johns. Md. Rep. 182.

Defendant cannot appear in case of attachment without bail. 3 Har. & McHen. Md. Rep. 575--553; 1 Am. Com. Law Rep. 598.

Apply this rule. The plaintiff brings an action on a note not due at the time of commencement of the suit, upon the allegation that it is the intention of the defendant to remove, &c., before the debt becomes due, and upon proof of this allegation alone is he entitled to recover. To this the defendant answers, that it was not his intention to remove, &c. This, if true, will defeat the present action, but when the note becomes due, if not paid he the plaintiff will be entitled to sue, and recover in another action. The plea is therefore within the rule, and properly pleaded in abatement; and we are entitled to a judgment for the defendant,

that the writ and declaration be quashed. But for the purposes of an argument, admit that the matter should have been pleaded in bar, then the judgment in the court below was right, because the plaintiff's declaration was defective in substance. The rule is, that where the plea is in abatement, but might have been pleaded in bar, then if the declaration is defective, the demurrer will be applied and sustained to the declaration, See 4 Term Rep. 226; Evans *v.* Stephens, 1 Chitty's Pleading, 405; 1 Bacon Ab. Abatement, P. p. 31; 1 Salk. 212.

The declaration was defective in substance upon its face, there was no allegation which showed that the plaintiff had any cause of action, or right to recover against the defendant, but was merely a declaration on a note due some time after the commencement of the suit: in order to a recovery it was necessary to prove, that the defendant at the time of the commencement of the suit intended to remove, &c., without this he could not recover; before proof of a fact can be made, there must be an allegation of the existence of that fact, otherwise as well dispense with all pleading. See Chitty on Pleading, 228; Roget *v.* Merrett, 2 Caines Rep. 119.

There was no averment in the declaration of the ground on which the suit was brought before the suit was commenced; the declaration was, therefore, defective, and the demurrer was properly sustained to it. It is insisted, however, that the law requires no proof of the intention to remove, but in cases where the defendant does not appear, replevy, &c. This is not the words of the section. They are, *where the defendant does not give security* for the payment of the debt *on or before the return of the writ*, then judgment is to be rendered, &c. If security is given to pay the debt when due, there is an end of the attachment, and no other proceedings can be had; but if the security is not given, then, by the very words of the law, the proof has to be made, notwithstanding the defendant may have replevied; and the reason is strong why in such case he should be held to the proof. The defendant has done all the law required of him; that is, entered his appearance, and plead; and being sued before he is in default, he is entitled to be informed why he is so sued, in violation of the ordinary rules of law; and until proof is made of the allegation upon which the suit is founded, the plaintiff cannot recover.

NOTE—in answer to the new grounds taken by the counsel for plaintiff in conclusion. There is no inconsistency between the purview of the 20th section of the attachment law and the proviso. The provision in the body of the section is, that the plaintiff shall have judgment, unless the defendant shall give bond with security to pay the debt when it becomes due; and the proviso is, that the attachment under that section shall be repleviable like all other attachments. Where is the inconsistency? There is none. They both can stand together. How? In this manner: the party may replevy, and after replevy a judgment shall be rendered against him for the amount of the debt, upon proof of the intention to remove, although the debt is not due. But any difficulty on this subject may be removed, if security is given for the payment of the debt when due. This is the clear construction of the statute, as will be seen by a critical examination of it, which I know the court will give it.

G. S. YERGER in reply.

1. The principal question in this case is, whether a defendant in attachment can, by simply entering his appearance to the action, replevy the property; or, in other words, whether the court will order the property attached to be restored to him upon his appearance, and thus destroy the lien created by the attachment, without any security whatever.

If this consequence follows, it is evident the attachment law is virtually repealed, and the debtor can, without hindrance, carry his property where he pleases, to evade the payment of his debt.

It is argued that it is a hard case to compel a man to give security for a debt not due, when perhaps he never intended to leave the country or remove his property. The answer is, it would be equally hard on the other side, that he should be permitted to carry off his property, in open day, in defiance of his creditors, and thus defeat them in their just rights. But another and a stronger answer is, that the law has provided ample redress for any abuse of the attachment law. Not only may, in cases of wilful perjury, the party be criminally prosecuted, but in all cases the bond and security required by law is intended to indemnify the debtor against any abuse of its process.

Garrett *v.* Tinnen.

2. But this is not a question of convenience or of hardship; it is one of positive law. We must ascertain, first, whether an attachment can issue, and if it can, then upon what terms can the defendant get back the property attached? The requirements of the law on these points are all that we can look to, and, when we have ascertained them, the question is settled, whatever may be the consequences to either party. And, to ascertain this, the act, by the last section, must be liberally construed in favor of creditors.

There can be no doubt a defendant in attachment may appear and replevy the property and contest the case upon its merits. He may rely on any legal defence that would defeat the action— as payment, release, set-off, &c. In such case, a special property is vested in the attaching officer, and a lien is created, which, when replevied, is divested. The property is in custody of the law until replevied, except perishable property, which must be sold; and the property is subject to the payment of the judgment, if one is obtained. 2 Mass. R. 517; 4 ibid. 99; 1 Pick. R. 389, 232; 9 Mass. R. 104; 10 ibid. 125.

The attachment creates a lien within the meaning of the bankrupt law. 1 Day's R. 117, 136.

And, in most of the states, property attached can only be replevied by security being given to have the property forthcoming. See cases cited in Met. & Perk. Dig. 317.

3. The question, then, is, whether a simple appearance alone is a replevy of the property. This depends entirely on the effect which the act of 1840 has upon the pre-existing attachment law.

It is argued by defendant's counsel that, notwithstanding the act of 1840, the court is authorized and required and can only take special bail, as in cases of attachment before, and that, if it so happens the defendant fraudulently conceals his property, the bond is broken.

This proves too much. If it can, for that reason, be required in attachment, it can when process is personally served; and, in both cases, the debtor will be imprisoned contrary to law. If bail is not given, he must go to jail until it is; and if he applies for a *habeas corpus*, Mr. Prentiss conceives "you cannot be discharged, for you may hereafter conceal your property."

42*

The act of 1840 prohibits imprisonment before the fact is proved by a jury that he concealed his property; and yet if bail can be legally exacted, it is 'evident he can be imprisoned before the fact is found, and the law be thus violated. But this will be best answered by seeing what the court would do, if a bail bond was taken and the party delivered up by his bail. He would unquestionably be discharged; and if so, his bail before delivery would be entitled to have an exoneratur entered. 9 Peters Rep. 330.

And the securities in such a bond without an exoneratur never could be charged, because a *ca. sa.* would have to issue to charge them, and this the act of 1840 positively prohibited. 7 Monroe Rep. 138.

These authorities conclusively prove that since the act of 1840, upon *mesne* process of any kind, a bail bond cannot be legally required. It is wholly inoperative as a security, for the moment it is taken, the court will be obliged the next minute to cancel it.

4. Let us now examine the 10th and 20th sections of the attachment law. The 20th section authorizes attachment for debts not due to issue, but provides that they may be replevied upon the same terms and conditions that other attachments are repleviable. The 10th section points out how and in what manner they shall be replevied. It authorizes the party at any time before final judgment to appear and to replevy upon entering into good special bail, or to replevy by giving bond to the sheriff to perform such order or judgment as might be rendered in the premises.

It is argued that an attachment under these sections is merely to compel an appearance, and when an appearance is entered the attachment is discharged. It may be admitted that an attachment is to compel appearance, and when you appear you may contest the claim on its merits. But whether upon appearance the property is to be re-delivered or remain a security for the debt, depends on the provisions of the law, and the law says it shall not be replevied merely by appearance unless security is given to the court to pay the debt or surrender his body, (which is the meaning of special bail,) or by giving bond to the sheriff conditioned to perform the judgment. These are the conditions annexed to the act of

replevying. He may appear without replevying, but he cannot replevy without giving the security required by the law.

It is argued that the bond to the sheriff is in effect a bail bond, and amounts to precisely the same thing as the bond required by the court, and that as they both amount to bail bonds, and as imprisonment for debt is abolished by the act of 1840, it necessarily follows that property may now be replevied without giving any security.

Admitting the position to be right, that both bonds simply amount to a bail bond, and that imprisonment for debt is abolished, the inference is directly the other way, to wit: that security for the debt, or for the performance of the judgment, is required before property can be replevied.

When the law said special bail or a bail bond should be given, what did it mean? It meant that a bond conditioned to pay the money, or surrender the person in discharge of the judgment, should be entered into. This is the technical meaning of a bail bond. Now, if a subsequent law says that in attachments so much of the condition of the bond as requires a surrender of the person shall be struck out, what is the consequence? Does it follow that striking out one of several conditions in the alternative, strikes out all? Unquestionably not. And yet this is the precise question before the court. The attachment law says, to replevy you must give bond conditioned to pay the debt, or render your body, &c. The act of 1840 says, no debtor shall be imprisoned for debt, &c. and thereby prohibits the insertion of a condition by which his body may be imprisoned: this condition is therefore to be left out of the bond by the act; or, in other words, the courts are not authorized to insert it: if they do, the bond will be void, as the authorities cited in Mr. Garrett's brief proved. Does it therefore follow that the other condition shall not be complied with, which is left in full force, to wit, the payment of the money?

How much of the act requiring bond on the replevy of property is repealed by the act of 1840? Only so much as requires his body to be imprisoned? On what principle is it, then, that the other part of the act requiring the condition of payment, &c. is not in force?

It is well settled, that where conditions are in the alternative,

the party may elect which he will perform; but if one becomes illegal, he is still bound to perform the other. Comyn Digest, title Condition, K. 2; 2 Bos. & Pullen, 242.

5. But is it true that the bond required to be given to the sheriff only amounts to a bail bond? Unquestionably not. The act itself makes a distinction. The bond to the court is a bond to pay the money or render the body; the bond to the sheriff is to perform the judgment, &c. The latter part of the act making the sheriff liable as surety on mesne process, Judge Hughes thinks converts it into a bail bond. Not so. The mesne process alluded to was the process in that case. See Tomlin's Law Dictionary, title, Mesne Process. The latter part of the section merely gives to the sheriff and the insufficient security the same rights which the sureties would have had, if they had been sufficient. We then say, that the law only repealed the attachment law so far as it required the security of his person, leaving the other security required in full force.

Suppose now a party wishes to replevy his property from the sheriff, must the bond not be conformable to the condition prescribed? and if judgment is afterwards obtained and not paid, will not the sureties be liable? When he applies to the court to replevy, what bond must it require? Not a bond to pay the money or deliver his body, for the latter is prohibited; but a bond with the condition, not prohibited, but left in force, to wit, to pay the judgment.

Whatever conditions the law has imposed, before he can appear and replevy, may be waived by the opposite party; but if not waived, must be complied with. 2 Leigh's Rep. 29; Walker's Rep. 301.

6. The plea in abatement is bad. Pleas in abatement are taken *stricti juris.* 5 How. Rep. 277; 10 Yerger, 527.

Pleas in abatement are of two kinds: those to the jurisdiction of the court, and those to the action of the writ, &c. Vide Stephens on Pleading, 46.

The plea in this case, if the plea' is allowable to be pleaded at all, is a plea to the jurisdiction. The court had no jurisdiction, according to the plea, if he did not intend to remove. All pleas

to the jurisdiction must be pleaded in person, and not by attorney. 1 Chitty on Pleading.

Again: the plea is bad, because it does not traverse the cause upon which the attachment issued. It does not deny but what good cause of suspicion or intention to remove existed.

But it is radically bad, because he does not state the time, &c. The plea ought to state he had no such intention at the time the attachment issued.

Again: such a plea is not allowable. If the process of the court is abused, or he has been wrongfully attached, the law has provided his remedy. 3 Randolph, 148; 7 Leigh, 660; 1 Virg. Rep. 34, 35; 5 Stewart & Porter, 158.

The declaration is founded on the note. The attachment is part of the record. No demurrer will lie to the declaration, because the note is not due, because the whole record must be looked to. And the declaration cannot be framed upon any cause of action other than the note, because the act authorizes the suit to be brought on the note before it is due, if it is not paid; but when judgment renders, [sells the property upon a credit of the same time the note has to mature. The declaration was obliged to aver it was not paid; because a note may be paid or settled before as well as after due.

The demurrer did not reach the declaration, because it was special; and the assignment of an insufficient breach, in all cases, is only cause of special demurrer to the declaration.

Mr. Justice CLAYTON delivered the opinion of the court.

This was an attachment for a debt not due, taken out under the attachment law of this state. It involves the inquiry, how, since the act of 1840 abolishing imprisonment for debt, the defendant may discharge the attachment, and release the property upon which it is levied. At first view it might seem not to be necessary for the decision of this question to advert to those parts of the statute which regulate attachments for debts already due; but a little examination will show that the whole statute comes into consideration, and that a construction must be put upon all the parts which relate to the replevying of the property attached.

The 25th section of the attachment law, as contained in How.

Garrett *v.* Tinnen.

and Hutch. 553, which is the section under which this proceeding is had, enacts, that "if the debtor shall not, on or before the return of the attachment, enter into bond, with sufficient security, for the payment of the debt when it becomes payable," the court shall, on proof of the debt, and of the intention to remove, grant judgment as in other cases of attachment; and the same section enacts, by way of proviso, that attachments authorized by it shall be repleviable in the same manner with other attachments. In regard to the replevy of property under other attachments, the 15th section of the same act provides, that it may be done at any time before final judgment or writ of inquiry executed, by appearance of the defendant, and putting in good special bail; or by giving bond, with good security, to the sheriff, or other officer serving the same, to appear at the court to which the attachment is returnable, and to abide by and perform the order and judgment of the court. If in this last instance the surety be adjudged insufficient by the court, and if the defendant fail to appear and give special bail as in the first instance is provided, then the sheriff and insufficient surety shall be subject to the same judgment, and have the same defence and relief, as if such surety had been taken on mesne process: that is, they are to be regarded as special bail.

The only other sections which it is necessary to notice are the 20th and 21st, which direct, that notice of attachments shall be given by publication, and that such notice, among other things, shall specify, that unless the defendant shall appear, give special bail, and plead, within the given time, judgment will be entered, and the attached effects sold. But if the defendant appear, put in bail, and plead, the estate attached shall be discharged and liberated.

It is plain, from these provisions, that in reference to debts due, the statute had but one leading object in view, to compel the defendant to appear, give special bail, and plead. When he complied with these requisites, as the law stood before the act of 1840, the property attached was discharged.

The bond to the sheriff, mentioned in the 15th section, was, in my estimation, little else than a bail bond. It is true it required the defendant to appear at the court to which the attachment was returnable, and to abide by and perform the order or judgment of

Garrett *v.* Tinnen.

the court; but if the defendant appeared and gave special bail, that bond was discharged. If he failed to appear, and the surety was adjudged insufficient, the sheriff was special bail, in the same manner as if the bond had been taken upon mesne process. The only case in which this bond to the sheriff had any other effect than a bail bond, was where the defendant failed to appear and give special bail, and where no exception was taken to the surety in the bond to the sheriff. What would be the state of parties under these circumstances is not pointed out by the statute, and as it has no direct bearing on this case, I shall give no opinion upon it. Hence, then, it seems manifest that in all cases of attachments under this act for debts due, the property might be discharged by appearance, and giving special bail. As the acts of 1839 and 1840 abolished the taking of bail and imprisonment for debt, except in a few specified cases, the consequence is, in regard to debts due, the defendant may by simple appearance and plea release the attached effects. It would be vain and useless to require him to give a special bail bond, when by law it could not be enforced. We cannot agree either with the counsel of the defendant, that in cases of attachment there is always such evidence of fraud as will make the bail bond valid; or with the counsel of the plaintiff, that we can remodel the bond by leaving out one of its conditions, and make it absolute for the payment of the judgment. As the bail bond would be nugatory, the conclusion is rational that an appearance and plea alone will, in cases where the debts are due, discharge the attachment.

In this case, which is an attachment for a debt not due, a different rule must prevail. The defendant by the 25th section already referred to, may discharge the attached effects in one of two modes. By the first he may give bond with sufficient security for the payment of the debt when it becomes due; by the other he may give special bail. The act of 1840 repeals so much of the attachment law by implication as is inconsistent with that act; but leaves the rest of that law not repugnant to it in full force. This is upon the well known rule of construction that where two statutes are inconsistent there is an implied repeal of the one first enacted to the extent of such inconsistency. The taking of special bail being against the act of 1840, is forbidden by it; but there being no re-

Garrett *v.* Tinnen.

pugnance between the other provision requiring security for the debt and the act of 1840, they may well stand together. We think, therefore, that the defendant ought not to be permitted in this case to procure the discharge of the property attached, except upon compliance with the other requirement of the statute—the giving of bond with sufficient security for the payment of the debt when it becomes due. If he fails to do this, the property must remain in the custody of the law; to be disposed of as the same section of the statute directs. This construction of the statute is in accordance with an old and familiar rule, that if a condition is to do one of two things, one of which becomes illegal or impossible, it is no reason for not performing the other. 1 Bos. & Pull. 242; Petersdorff, title Condition, p. 41, 42.

If it be said that there is no reason for the distinction between cases in which the debt is due, and those in which it is not due, the reply is, that the legislature has created the distinction, and it is our duty to enforce it.

A few words will dispose of the remaining question upon the subject of the pleadings. The defendant had no right to plead at all, until he had complied with that provision of the statute which we have pointed out as being still in force, and the court erred in receiving a plea from him.

We think, therefore, the judgment should be reversed, and the cause remanded, to be proceeded in according to the opinion of this court.

Mr. Chief Justice SHARKEY.

The plaintiff sued out an attachment against the goods and chattels of the defendant, for a debt not due, and the question is, what is the effect of the act of 1840 abolishing imprisonment for debt on such attachments?

In the circuit court, the defendant was allowed to replevy, by entering his appearance, and putting in special bail, and at the last term of this court the judgment was reversed; but a reargument was granted, and we have accordingly reviewed our decision.

By the 25th section of the attachment law, How. & Hutch. Dig. 553, a creditor, on making the proper affidavit, and giving the requisite bond, is authorized to sue out an attachment before the

Garrett *v.* Tinnen.

debt is due.   This is a privilege granted to the plaintiff.   Now in case such attachment is issued, what is the privilege of the defendant, or how may he release the property attached?   The same section provides: "If such debtor shall not, on or before the return day of the attachment, enter into bond, with sufficient security, for the payment of said debt when it shall become payable, the court, on due proof of the justice thereof, and of the intention of the debtor to remove, or of his having actually removed out of this state, shall grant judgment as in other cases of attachments."   This is one mode by which the property can be released, and although the law seems to require that such bond should be given before the return day of the attachment, yet it is believed that it may be given at any time before the judgment and the object of the law will be fully accomplished.   But the same section provides that such attachments shall be repleviable in the same manner as other attachments are by law repleviable. Let us see, then, how other attachments are repleviable, and when we have done so, we shall have shown all the privileges of the defendant.

By the 15th section it is provided that "all attachments shall be repleviable at any time before final judgment entered, or writ of inquiry executed, on the appearance of the defendant, and putting in good special bail, or by giving bond with good security to the sheriff or other officer serving the same, which bond the sheriff or other officer is thereby required and empowered to take, to appear at the court to which such attachment is returnable, and to abide by and perform the order and judgment of such court."   This bond which the sheriff is authorized to take, I regard as nothing more than a special bail bond, as appears by the latter part of the section, which provides that if the security be adjudged insufficient, and if the defendant shall fail to appear and give special bail, the sheriff is to be substituted as bail, and have the same liberty of defence as if the surety had been taken on the execution of mesne process.  The defendant is not required to appear and give special bail unless the bail given to the sheriff be adjudged insufficient. If it be insufficient he must perfect bail, or the sheriff is to stand as bail.   This view of the subject seems to be clear, when it is considered that an attachment is regarded as a mere means of

Vol. VII.—43

Garrett *v.* Tinnen.

forcing appearance, or mesne process. Thus it will be seen that if an attachment be issued for a debt not due, the defendant may adopt either of the two alternatives ; he may give security to pay the debt when it becomes due, and by that means put an end to the proceeding ; or he may give special bail, either to the sheriff or in open court. In either case, the plaintiff is supposed to be indemnified. His rights are protected, as well as those of the defendant. By the act of 1840, imprisonment for debt is abolished, and by necessary implication, this repeals the provision for special bail which is required to be given in cases of attachment. It abolishes one of the modes by which the plaintiff is indemnified. But it does not necessarily destroy the other, as nothing is repealed by implication, except what is repugnant to, or inconsistent with the repealing act. The right to sue out an attachment for a debt not due is not repealed, nor is the plaintiff's right to have security for the payment of the debt when it becomes due taken away. This constitutes part of the plaintiff's remedy; without it the attachment would be ineffectual. To hold that this part of the remedy was destroyed, would in effect abolish the whole of the attachment law, a thing which was evidently not designed by the legislature. As the defendant was obliged, if he wished to discharge his property in case of attachment for debt not due, to give bond to pay the debt, or to give special bail, it follows necessarily, that as the one is repealed, he is deprived of his alternative, and must adopt the other mode, or suffer his property to remain in custody.

In regard to the plea in abatement, I incline strongly to think that it is not a proper plea in any case of attachment, unless for some irregularity in the affidavit, the attachment process, or the bond ; but even if such a plea could be pleaded, this plea is clearly bad, as it does not traverse the language and meaning of the affidavit, on which an attachment is authorized to issue. For these reasons, I think the court below erred in allowing the party to replevy by giving special bail, and in allowing the party to plead. The singular attitude in which the defendant is placed is the result of legislation, and whether that be provident or improvident, the effect is not altered.

Garrett *v.* Tinnen.

Mr. Justice TURNER.

The first question presented in this case is, whether the attachment law of 1822 is repealed, or modified, altered, or changed, in relation to the kind of security to be taken of the defendant, for it is not pretended that the remedy by attachment is entirely abrogated by the act of 1840, p. 40.

The duty imposed upon the judicial department of the government, to construe the acts of the legislative department, is a necessary one, but it must be admitted that it is a very delicate one, and should be exercised with great caution and circumspection. We all know that in England, where it is said that their parliament or legislative department is omnipotent, the courts construe their statutes; and they have done it from time immemorial, and with great freedom, and the rules for construing statutes have become fixed and settled law.

The duty of the government to take care of our citizens, in all their rights, is paramount. Among those duties is that of securing to every creditor the means of obtaining satisfaction for his debt or demand, out of the effects of the debtor, found within our state, whilst the debtor is alive, and even after his death, by giving to the local administrator or executor the custody and distribution of the estate of the deceased, to the exclusion of the foreign administrator.

To guard against a debtor's absconding and removing his property from the state, leaving behind him unsatisfied demands, the law has provided various remedies for the protection of the rights of its citizens. Such as the writs of *ne exeat*, and attachment; and the courts, both of law and of chancery, have jurisdiction in such cases, both as to resident and non-resident debtors, having effects within our state. See Rev. Code, p. 157, 160, 84, 95, 145.

Our acts of 1839, p. 67 to 72, and the act of 1840, p. 40, amendatory thereto, have in view the benevolent purpose of relieving from imprisonment for debt, all persons within our jurisdiction, not suspected of fraudulent designs, in concealing his or their property. The honest debtor, and no other, is the object of this exemption from imprisonment; and I consider that the acts in question have no reference to the attachment laws, further than by necessary and reasonable implication. The act of 1839, has no

Garrett *v.* Tinnen.

relation or express reference to the laws regulating attachments, and allowed arrests to take place before and after judgment in certain cases.   The act of 1840, provides that no person shall be imprisoned for debt, under any pretence, unless upon issue submitted to a jury, and they declare there has been fraud upon the part of the debtor, in concealing his property.   But no allusion is made to the process of attachment.   This process runs against property, and not persons, and it may well be doubted whether the legislature intended those acts to apply, at all, to proceedings under the attachment laws of the state.   Be this as it may, however, we have no doubt that in this case the proceeding must be governed by the 20th section of the attachment law.   Rev. Code, p. 165. This section provides as follows, viz :

"Whenever any creditor shall have sufficient grounds to suspect that his debtor will remove with his effects out of this state, before his debt will be payable; or whenever such debtor shall have so removed, leaving effects, it shall be lawful for such creditor to go before any justice, or judge of the county court, or justice of the peace of the county where his debtor resides, or in case such debtor has removed, where he last resided, or where his effects may be found, and make oath or affirmation to the true amount of his debt, and the time when it will be payable, and that he hath just cause to suspect, and verily believes, that such debtor will remove himself, with his effects, out of the state, before the said debt will become payable, or hath actually so removed; and also that he had no knowledge, when the said debt was contracted, of the intention of such debtor so to remove; and thereupon such judge or justice, taking bond and security from such creditor, as in other cases of attachments, shall issue an attachment against the goods and chattels of the debtor, returnable to the next term of the court having jurisdiction thereof, which attachment may be served on any goods and chattels of such debtor, or any garnishee or garnishees.   If such debtor shall not, on or before the return of such attachment, enter into bond, with sufficient security, for the payment of the said debt, when it shall become payable, the court, on due proof of the justice thereof, and of the intention of the debtor to remove, or of his having actually removed out of the state, shall grant judgment, as in other cases of attach-

ments; but execution shall be stayed against any garnishee, &c. until the claim of the plaintiff, or such garnishee's debt to the defendant shall become due, and the goods condemned shall be sold upon a credit," &c. and the bonds for the purchase money shall be assigned to the plaintiff, but returned to the clerk's office, and execution may issue thereon as on judgments; and if any surplus, the same to be secured in like manner for the benefit of the defendant. Then comes the proviso, "that all such attachments shall be repleviable in the same manner as other attachments are by law repleviable."

The 10th section of that act directs when and how repleviable, which replevy may take place at any time before final judgment entered, or writ of inquiry executed, on the appearance of the defendant, and putting in good special bail, or by giving bond with good security, to the sheriff or other officer serving the same, to appear at the court to which such attachment shall be returnable, and to abide by and perform the order and judgment of the court.

From these statutory provisions, I come to the conclusion that, notwithstanding the act of 1840, attachments may still issue, and bonds be taken of defendants, not inconsistent with the provisions of that act. According to the 20th section, under which the present attachment issued, the defendant, if he gives bond, is to give it for the payment of the debt when it becomes payable, and to give it on or before the return of the attachment; but if he comes in after the return, then he may replevy his property, by giving a like bond; that is, to abide by and perform the judgment of the court.

If the defendant gives the bond under the 20th section, on or before the return of the attachment, the plaintiff can proceed no further with his suit; but if the defendant comes in after the return day, and before judgment or writ of inquiry executed, he may replevy and defend the suit, by pleading, &c. and the suit will proceed to final judgment, but execution be stayed until the debt becomes due, if plaintiff recover.

On the return of this attachment, levied on sundry slaves and other property, the plaintiff filed his declaration, the defendant appeared and entered into recognizance with security for his ap-

43*

pearance, and to pay and satisfy the condemnation of the court, or render his body to prison for the same.

The plaintiff excepted to this, but the exception was overruled; whereupon, at a subsequent day of the term, the defendant filed a plea in abatement, in which he averred, "that it was not his intention to remove, nor would he have removed himself with his effects out of the state of Mississippi before the debts mentioned in the original writ herein became or fell due;" and prayed judgment of the writ, &c., and that the same may be quashed, &c. To which plea the plaintiff demurred.

The court rendered the following judgment: "and because it appears to the court that the declaration of the plaintiff is defective and insufficient, it is therefore considered by the court that the said demurrer be applied to said declaration, and sustained," and gave leave to the plaintiff to amend, which he declined; whereupon a final judgment was entered for the defendant, and the plaintiff sued out this writ of error.

The errors assigned are to the judgment of the circuit court, in permitting the recognizance of bail to be entered, and in sustaining the demurrer as to the plaintiff's declaration.

The preceding remarks disposes of the first assignment. I consider that the recognizance or bond should have been allowed, on such condition only as the laws now contemplate, to wit, for the payment of the debt, or to abide by and perform the order and judgment of the court, special bail being abolished by implication.

As to the declaration, it is in the common form of declarations on promissory notes. To be sure, it declares on demands not then due; but the statute has allowed this, and no prejudice can result to the defendant, inasmuch as no satisfaction can be made or enforced, until the debt becomes due.

The court erred, however, in rendering judgment on the declaration. This plea, if any plea at all, is a plea in abatement, and the subject matter of it could not be plead in bar. It is essentially abateable matter which is attempted to be pleaded, and the plea itself is bad. We admit that pleas in abatement may be pleaded in cases of attachment, as infancy, coverture, &c.; but this plea contains immaterial matter. The law says, that whenever any creditor shall have sufficient grounds to suspect that his

Garrett *v*. Tinnen.

debtor will remove with his effects out of this state, before his debt will be payable, and make oath that he has just cause to suspect and verily believes that such debtor will remove himself with his effects, &c. he may sue out his attachment.

The plea says, that it was not the intention of the defendant to remove, nor would he have removed himself with his effects, &c. it does not say that the plaintiff had no cause to suspect. If the defendant had responded to the allegation of the plaintiff in his affidavit, the plaintiff might have taken issue on the fact, and on trial the jury would have decided on the evidence, not whether the defendant intended to remove himself and his effects, but whether the plaintiff had just cause to suspect and believe that he would do so.

I consider that a defendant in attachment is amply protected from injury by the statute, which requires, in the first place, that the plaintiff shall give bond to the defendant conditioned to pay and satisfy the defendant all such costs and damages, &c. for wrongfully suing out the attachment; and in the second place, by replevying his property and defending the action, which he will be allowed to do as fully and effectually as if sued by original capias or summons. He can move to quash the attachment from defects appearing on the face of the proceedings, or plead in abatement, or in bar, as infancy, coverture, payment, &c.

This cause has been fully argued by the counsel on both sides, and many points raised and ably discussed, which we deem it unnecessary to notice.

The judgment must be reversed, and the cause remanded, with leave to the defendant to enter bond, according to the foregoing view of the law, and for further proceedings in the court below.